## UNDERWOOD, survivor, *v.* CALDWELL.

1. When one sued upon a promissory note, given for the purchase-price of a stock of goods which were purchased upon agreement that he was to pay for them a given per cent. upon the cost price to the seller, seeks to avoid liability upon the ground that he was induced to purchase such stock of goods in consequence of fraudulent representations as to the price paid for them by the seller, a plea setting up such a defense is not supported by evidence that the goods were worth less than the price at

which they were invoiced to him; there being no evidence whatever going to show that the price at which the goods were so invoiced was not in fact the price at which the seller purchased them.

2. Where in the contract of purchase it was agreed that there should be a further reduction from the purchase-price to be paid for any of such goods as might be old or damaged, such reduction to be agreed upon by the parties, and there was no evidence that after the delivery of the goods to the purchaser, and before the appropriation of the same by him to his own use, he had either agreed upon or demanded of the seller that an agreement be made between them as to the amount to be deducted from the purchase-price in consequence of the fact that some of such goods were old or damaged, a defense setting up that at the time the goods were delivered to him some of them were in fact old or damaged would not avail.

3. Under the facts of the present case, the court did not err in directing a verdict for the plaintiff.

Submitted June 28, — Decided July 21, 1897.

Complaint on notes.  Before Judge Gober.  Greene superior court.  August term, 1896.

Caldwell sued Underwood upon two promissory notes for $672.37 each, interest and attorney's fees, executed by the defendant and Henning as joint and several makers, and payable to the order of Heard, by whom they were endorsed to the plaintiff.  The defendant pleaded partial failure of consideration, and that the notes were transferred to the plaintiff after maturity and with notice of the facts alleged in the plea.  The court directed a verdict for the plaintiff for the amount sued for, less admitted payments.

The following appeared from the evidence:  The consideration of the notes was a stock of goods purchased from one Bowden by defendant and Henning, who were partners in business.  $500 of the purchase-money was paid in cash, and these notes and another note were given for the balance. Bowden had given a mortgage on the goods to Heard, and the notes were made payable to Heard and accepted by him in pursuance of an arrangement between Heard and Bowden, whereby Heard surrendered to Bowden a note which he (Heard) held against him, and canceled the mortgage and released him from the debt.  The notes given by defendant and Henning to Heard correspond in amount with the indebtedness of Bowden to Heard.  Bowden owed Heard about $1,000 for an

2

old debt secured by a mortgage on the goods, and Heard borrowed $1,000 for Bowden at the time the stock of goods was sold and let him have it. Bowden had just failed. He is a first cousin of Heard. The notes sued on were transferred by Heard to plaintiff before maturity, as collateral for a debt of about $700 which Heard owed plaintiff. When the defendant and Henning purchased the goods, the agreement was that they were to pay 75 per cent. of the cost price on new goods; and a further reduction, which was to be agreed upon by them, was to be made on any old or damaged goods. Neither Henning nor the defendant knew anything of the value of the goods, and they relied entirely on the representations of Bowden, who took the inventory. Defendant did not help to take stock but one day. The stock consisted of clothing, jeans, trimmings, notions, a soda-fountain, etc. Defendant had kept a grocery-store, but before that had farmed all of his life, and Henning had been a telegraph lineman. They afterwards found that some of the goods were marked too high, and that goods of the same kind could be bought from other dealers at less than the price at which these goods were sold by Bowden to the defendant. On certain items stated there was an overcharge of between $400 and $500. The soda-water fountain, which was represented to be in good order and as costing $450, and which was invoiced at $337.50, proved to be leaky, rusty and in bad order generally, and the defendant was not able to get an offer of over $100 for it. It was not worth more; and its real cost when new was about $225. When Bowden was taking the inventory the defendant, according to his own testimony, had full access to and could have overlooked the entire work if he had desired. Heard had nothing to do with taking the inventory, knew nothing of the value of the goods, had nothing to do with the trade between Bowden and the defendant, nor with the inventory; never heard of any complaint about the goods nor of any defense to the notes until long after the notes were due. The first of the notes was paid, and a year after they were given, the defendant gave Heard a mortgage on the goods to secure the payment of the notes. The plaintiff took the notes from Heard without notice that

there was anything wrong with them. Bowden is out of the State. Heard told defendant that he did not think Bowden would let him (Heard) lose the money, and that he (Heard) could get a mortgage on the house and lot of Bowden's wife. He did not get it, however. Bowden had no other property. Henning is dead.

*Samuel H. Sibley*, for plaintiff in error.

LITTLE, J. The official report states the facts. The head-notes in this case express clearly the conclusions arrived at by this court, after a careful inspection of the record and briefs of counsel. Under the pleas filed, no legal reason is shown by the facts, in bar of the right of the plaintiff to recover the amount returned by the jury in its finding, and there was no error committed in directing the verdict.

*Judgment affirmed. All the Justices concurring.*